Adam E. Jones, OSB 152429
ajones@selmanlaw.com
SELMAN BREITMAN LLP
111 SW 5th Avenue, Suite 3150
Portland, OR 97204
Telephone: (503) 444-3530
Attorneys for Plaintiff Scottsdale Insurance Company

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>OAKMONT, LLC, dba BERKSHIRE COURT APARTMENTS; W.R. CONSTRUCTION ENTERPRISES, LLC, dba WESTERN ARCHITECTURAL; HDL COMPANY, LLC, dba WESTERN ARCHITECTURAL; JAMES HAGERMAN, A PROFESSIONAL LICENSED ARCHITECT; and ERIC HOFF, A PROFESSIONAL LICENSED ARCHITECT,<br><br>Defendants. | Case No. _____<br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

## I.    COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, Scottsdale Insurance Company ("Scottsdale"), and as its Complaint

for Declaratory Judgment against Defendants Oakmont, LLC, dba Berkshire Court Apartments

("Oakmont"), W.R. Construction Enterprises, LLC, dba Western Architectural ("W.R.

COMPLAINT FOR DECLARATORY JUDGMENT -1

Construction"), HDL Company, LLC, dba Western Architectural ("HDL Company"), James Hagerman, a professional licensed architect ("Hagerman"), and Eric Hoff, a professional licensed architect ("Hoff"), alleges, states, and avers:

## II.    JURISDICTION AND VENUE

1.    Jurisdiction is this matter is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

2.    Scottsdale is, and at all relevant times was, an insurance company organized under the laws of the State of Ohio and with its principal place of business in the State of Arizona.  Scottsdale is duly authorized to transact business, and is transacting business in the State of Oregon.

3.    Scottsdale is informed and believes and thereon alleges that defendant Oakmont is, and at all relevant times was, an Oregon limited liability company and the owner of the Berkshire Court Apartments located in the Wilsonville, Oregon.

4.    Scottsdale is informed and believes and thereon alleges that defendant W.R. Construction is an inactive Oregon limited liability company, and, at all relevant times, was an Oregon limited liability company authorized to transact business in the State of Oregon.

5.    Scottsdale is informed and believes and thereon alleges that defendant HDL Company is an inactive Oregon limited liability company, and, at all relevant times, was an Oregon limited liability company authorized to transact business in the State of Oregon.

6.    Scottsdale is informed and believes and thereon alleges that defendant Hagerman is a resident of the state of Oregon.

COMPLAINT FOR DECLARATORY JUDGMENT -2

7.    Scottsdale is informed and believes and thereon alleges that defendant Hoff is a resident of the state of Oregon.

8.    Scottsdale brings this action to obtain a declaratory judgment that it has no duty to defend or indemnify any of the defendants, in connection with a lawsuit filed in the Circuit Court for the State of Oregon, Clackamas County, styled *Oakmont, LLC v. W.R. Construction Enterprises, et al.*,  No. 16CV20521 (the "Underlying Lawsuit"). A true and correct copy of the complaint in the Underlying Lawsuit is attached as **Exhibit A**.

9.    Diversity jurisdiction exists because: a) there is complete diversity of citizenship between Scottsdale and defendants; and b) the amount in controversy, including the potential costs of defending and indemnifying defendants, exceeds $75,000.

10.    Venue is appropriate under 28 U.S.C. § 1391 because Oakmont, W.R. Construction, and HDL Company conduct or conducted business in the state of Oregon at all relevant times, individual defendants Hagerman and Hoff are Oregon residents, and all of the alleged conduct forming the basis of the Underlying Lawsuit occurred in Oregon.

### III.    THE UNDERLYING LAWSUIT

11.    The complaint in the Underlying Lawsuit was filed on or about June 28, 2016.

12.    Oakmont alleges that it contracted with W.R. Construction and/or HDL Company, each of which are alleged to have been doing business as Western Architectural in May 2008. W.R. Construction and HDL Company are, where appropriate, collectively referred to herein as "Western."

13.    Oakmont claims that, pursuant its contract with Western (the "Contract"), Western was to provide services to Oakmont with respect to repair or maintenance work on the

COMPLAINT FOR DECLARATORY JUDGMENT -3

Berkshire Court Apartments (the "Apartments"), an apartment complex consisting of 26 apartment buildings and one clubhouse building.

14.     Oakmont alleges that the Contract's scope was expanded to include additional services pursuant to a March 17, 2011 agreement.

15.     Oakmont further alleges the following in its complaint:

> ¶7.     The March 17, 2011 Agreement designated James Hagerman as the "Project Architect," "Project Manager," "Lead Investigator" and assigned Hagerman as the person primarily involved in site visits during the remediation project.
>
> …
>
> ¶10.     During the court of the Project, Western, Hagerman and Hoff performed a variety of services, including but not limited to:
>
> 10.1     Preconstruction Services;
>
> 10.2     Development of a Project Manual and Addenda #1 through Addenda #4 containing product specifications, details and designs;
>
> 10.3     The review and approval of product submittals;
>
> 10.4     Review and approval of mock ups;
>
> 10.5     Review and approval of change orders, RFI's (requests for information) and substitution requests;
>
> 10.6     Observations and reports during the course of construction;
>
> 10.7     Construction administration;
>
> 10.8     Serving as the interface between the Owner, contractors and material suppliers for the Project; and
>
> 10.9     Preparation of a final report containing manufacturer's product installation requirements, product data and appropriate warranties.

COMPLAINT FOR DECLARATORY JUDGMENT -4

…

¶14.   Oakmont discovered defects in the quality of the design, construction administration, products, and workmanship relating to the work at the Apartments, including but not limited to:

14.1   Project Manual and Drawings that specified asphalt adhesive flashing and PVC membrane in decking products to be brought into physical contact with each other – a known incompatible condition resulting in liquefaction of the asphalt adhesive by plasticizers off gassing from the PVC.

14.2   Approval of a substitution request that resulted in the combination of two incompatible products, "FortiFlash," an asphaltic adhesive flexible membrane in combination with "Duradek", a vinyl deck material. Hagerman and possibly others at Western reviewed the substitution request and approved the use of these two incompatible products. This has resulted in the liquefaction of the asphalt adhesive from the FortiFlash dripping onto the Duradek membrane.

14.3   Improper penetrations in the Duradek membrane during installation that has resulted in the manufacturer voiding the product warranty and leaving the materials under the Duradek vulnerable to water damage.

14.4   Approval of a change in the installation of the Duradek membrane at the door sill that resulted in the elimination of a door sill pan and proper integration of the Duradek membrane with the door sill leaving a path for water to migrate from the deck into the framing.

14.5   Failure to properly perform the observation services to notice the defective installations and to advise the contractor to correct the defective installations.

…

¶15.   The faulty construction, workmanship, design, construction, administration, improper installation, and/or non-compliance with approved building standards and/or manufacturers' guidelines and specifications are the cause of property damage at the landings of the Apartments, including but not limited to, corrosion, rusting, deterioration, to the landings components, the voiding of the manufacturer's warranty for the Duradek product, and dripping tar like substance that has damaged the Duradek material resulting in Duradek voiding its manufacturer's warranty, compromising the Duradek material, and resulting in a tar like

COMPLAINT FOR DECLARATORY JUDGMENT -5

> substance being tracked into the apartment units causing further property
> damage to the carpets in the apartment units
>
> …
>
> ¶17.    The damages are a direct result of defects in design and/or
> construction practices not meeting generally accepted standards of care in
> the industry. At the time the services were performed by Defendants, the
> product incompatibility between products made of PVC and flashing
> products containing asphaltic adhesives, as more particularly alleged in
> and  ¶¶14.1 and 14.2 above, was widely known in the design and
> construction community for over a decade.
>
> ….

16.    Based on the foregoing, Oakmont alleges two claims for relief; (1) Negligence
and (2) Breach of Contract. For each claim for relief Oakmont asserts that it is entitled to a
judgment against defendants, jointly and severally, for an amount not expected to exceed
$1,175,926, pre- and post-judgment interest at nine percent per annum, and Oakmont's attorney
fees and costs.

### IV.    THE SCOTTSDALE POLICIES

17.    Scottsdale issued to named insured W.R. Construction Enterprises, LLC, dba
Western Architectural, two consecutive general commercial liability policies numbered,
respectively: BCS0027611 (04/21/2012 – 04/21/2013) (the "2012 Policy") and BCS0030045
(04/21/2013 – 04/21/2014) (the "2013 Policy") (collectively, the "Scottsdale Policies").  True
and correct copies of the Scottsdale Policies are attached hereto as **Exhibits B** and **C**,
respectively, and incorporated herein by reference.

18.    The Scottsdale Policies are each issued with an Insurance Services Office ("ISO")
Commercial General Liability Coverage Form CG 00 01 (12/07), which provides in relevant
part:

COMPLAINT FOR DECLARATORY JUDGMENT -6

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

* * *

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

     **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

        **(1)**    The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        **(2)**    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

     **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place  in the "coverage territory"; and

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)**    Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or

"property damage" had occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

\* \* \*

**d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of "bodily injury" or "property damage"; or

**(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\* \* \*

**SECTION V – DEFINITIONS**

\* \* \*

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

17.    "Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

19.    Each Policy contains the following standard ISO exclusions (including the relevant definitions), including the following:

COMPLAINT FOR DECLARATORY JUDGMENT -8

This insurance does not apply to:

\* \* \*

**b.      Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

**(1)**      That the insured would have in the absence of the contract or agreement; or

**(2)**      Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided;

(a)      Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)      Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

**j.      Damage To Property**

"Property damage" to:

\* \* \*

(5)      That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations.

\* \* \*

(6)      That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed

COMPLAINT FOR DECLARATORY JUDGMENT -9

under a side track agreement.

* * *

k. **Damage to Your Product**
"Property damage" to "your product" arising out of it or any part of it.

* * *

m. **Damage To Impaired Property Or Property Not Physically Injured**
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

* * *

**SECTION V – DEFINITIONS**

* * *

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;
if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

* * *

COMPLAINT FOR DECLARATORY JUDGMENT -10

16.    "Products-completed operations hazard":

    a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1)    Products that are still in your physical possession; or

        (2)    Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

            (a)  When all of the work called for in your contract has been completed.

            (b)  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            (c)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

            Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    b.    Does not include "bodily injury" or "property damage" arising out of:

        (1)  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        (2)  The existence of tools, uninstalled equipment or abandoned or unused materials; or

        (3)  Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

* * *

21.  "Your product":

    a.  Means

        (1)  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (1) You, […]

    b.  Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        (2)  The providing of or failure to provide warnings or instructions. […]

22.  "Your work"

    a.  Means:
        (1)  Work or operations performed by you or on your behalf; and
        (2)  Materials, parts or equipment furnished in connection with such work or operations.

    b.  Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and

        (2) The providing of or failure to provide warnings or instructions.

20.  Each Scottsdale Policy contains a Continuing or Ongoing Damage Exclusion, issued on Form GLS-281s (09/07), which provides:

**CONTINUING OR ONGOING DAMAGE EXCLUSION**

This endorsement modifies insurance provided under the following:

COMPLAINT FOR DECLARATORY JUDGMENT -12

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY INSURANCE
FORM–COVERAGE FOR OPERATIONS OF DESIGNATED CONTRACTOR

The following exclusion is added to subsection **2. Exclusions** of **SECTION I–COVERAGE:**

**Continuing Or Ongoing Damage**

1. The "property damage" first occurred, began to occur or is alleged to have occurred or been in the process of occurring, to any degree, in whole or in part, prior to the inception date of this policy.

2. The "property damage" is indiscernible from other damage that is incremental, continuous or progressive damage arising from an "occurrence" which first occurred, began to occur or is alleged to have occurred, to any degree, in whole or in part, prior to the inception date of this policy.

21.    Each Scottsdale Policy contains a Prior Completed Work Exclusion, issued on

Form GLS-296s (07/08), which provides:

**PRIOR COMPETED WORK EXCLUSION – SPECIFIED DATE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following exclusion is added to subsection **2. Exclusions** of **SECTION I–COVERAGE, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

This insurance does not apply to "bodily injury" or "property damage" arising out of, in part of in whole, "your work" completed prior to 04/21/2012.

"Your work" will be deemed completed at the earliest of the following times:

      a.    When all of the work required by your contract has been completed.
      b.    When all of the work to be done at a job site has been completed if your contract calls for work at more than one job site.
      c.    When that part of the work done at a job site has been put to its intended use by any person or organization.
      d.    When a certificate of completion, or a certificate of occupancy, or other

COMPLAINT FOR DECLARATORY JUDGMENT -13

> similar document is issued.
> e.   When you abandon the work.
> Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be deemed completed.

22.     Each Scottsdale Policy contains a Designated Professional Services Exclusion,

issued on Form CG 21 16 (07/98), which provides:

> **EXCLUSION – DESIGNATED PROFESSIONAL SERVICES**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> **SCHEDULE**
>
> Description Of Professional Services:
>
> ALL PROFESSIONAL SERVICES OF ANY INSURED
>
> With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**
>
> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

23.     Each Scottsdale Policy contains a Punitive or Exemplary Damage Exclusion,

issued on Form UTS-74g (08/95), which provides:

> **PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION**
>
> This endorsement changes the policy.
>
> In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.
>
> Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.
>
> If suit is brought against any insured for a claim falling within coverage provided under

COMPLAINT FOR DECLARATORY JUDGMENT -14

> the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

24.     The 2012 Policy contains a Designated Work Exclusion, issued on Form CG 21 34 (01/87), which provides:

> **EXCLUSION – DESIGNATED WORK**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> **SCHEDULE**
>
> **Description of your work:**
>
> All of "your work" that both:
>
> 1.     Is neither in whole or in part within the states of Arizona, California, Colorado, Louisiana, Nevada, Texas or Washington; and
> 2.     Consists of a (an):
>    a.     Tract or subdivision of single or multi-family dwelling(s);
>    b.     Townhouse, townhome, or other multi-unit habitational building(s), except apartments;
>    c.     Residential condominiums or residential cooperatives; or
>    d.     Multi-use/mixed use projects that include any of the occupancies described in items a, b and c above.
>
> That does now, or is designed to include, more than twelve (12) residential units in total.
>
> But this does not include such operations conducted upon a particular structure when all of the operations conducted by you or on your behalf upon such structure meet the following criteria:
>
> 1)     The work is for remodeling or repair only; and
> 2)     The work is being performed on an existing structure that already has a Certificate of Occupancy at the time that such operations first commenced.
>
> This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the

Schedule.

25.    The 2012 Policy contains a Designated Ongoing Operations Exclusion, issued on

Form CG 21 53 (01/96), which provides:

**EXCLUSION – DESIGNATED ONGOING OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

Description Of Designated Ongoing Operation(s):

All operations upon any structure that is or is part of a(an):

a.    Tract or subdivision of single or multi-family dwelling(s);
b.    Townhouse, townhome, or other multi-unit habitational building(s), except apartments;
c.    Residential condominiums or residential cooperatives; or
d.    Multi-use/mixed use projects that include any of the occupancies described in items a, b and c above.

That does now, or is designed to include, more than twelve (12) residential units in total.

But this does not include such operations conducted upon a particular structure when all of the operations conducted by you or on your behalf upon such structure meet the following criteria:

1)    The work has been for remodeling or repair only; and
2)    The work has been performed on an existing structure that already has a Certificate of Occupancy at the time that such operations first commenced.

The Specified Location (If Applicable):

Any location that is neither in whole or in part within the states of Arizona, California, Colorado, Louisiana, Nevada, Texas or Washington.

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the

COMPLAINT FOR DECLARATORY JUDGMENT -16

ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf.  If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

26.     The 2013 Policy contains a Multi-Unit Habitational Conversion Exclusion, issued

on Form GLS-282s (04/08), which provides:

**MULTI-UNIT HABITATIONAL CONVERSION EXCLUSION**

This insurance modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "property damage" included in the "products-completed operations hazard" to any structure(s) converted, including all operations necessary on the job site for the conversion, into:

1.  A residential townhouse, townhome, or other multi-unit habitational building(s) designed or developed for sale to an individual or multiple owners;

2.  Residential condominiums or residential cooperatives; or

3.  Multi-use or mixed use projects which include any of the occupancies described in items 1. and 2. above, regardless if the conversion took place prior to, during or after the policy period.

However, this exclusion shall not apply to any of "your work" performed on such structure(s), including operations necessary on the job site for the conversion, if "your work" was not conducted as part of the conversion operations or related in any way to the conversion operations or included within those conversion operations

27.     The 2013 Policy contains a Residential Building Project Exclusion, issued on

Form UTS-322s (01/09), which provides:

COMPLAINT FOR DECLARATORY JUDGMENT -17

**RESIDENTIAL BUILDING PROJECT EXCLUSION**

This insurance modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
ERRORS AND OMISSIONS COVERAGE PART

This insurance does not apply to damages because of "bodily injury", "property damage", personal and advertising injury" or "error or omission" arising from "your work" on, in connection with or in any way related to a "residential project."
For those items identified below with an "x" in the corresponding box, this exclusion shall not apply to "your work":

* * *

**X**    6.    That is included within the following Class Code(s), Business Description(s) or designated operations: **LANDSCAPING**

For purposes of this endorsement:

"Residential project" shall mean any building construction project, including structural repair, renovation or remodeling operations, involving one or more single-family homes, townhouses, townhomes, residential condominiums or cooperatives, duplexes, any type of structure converted into condominiums, or any other type of domicile intended for individual or collective residential ownership, and shall include all buildings appurtenant these structures.

"Residential project" shall also include any building construction project, including structural repair, renovation or remodeling operations, involving mixed-use buildings which contain both residential units and commercial space, and shall include all buildings appurtenant these structures.

"Residential project shall not mean apartments unless "your work involves converting apartments into condominiums or cooperatives or into any other type of domicile intended for individual or collective residential ownership.

We shall have no duty or obligation to provide or pay for the investigation or defense of any loss, cost expense, claim or "suit excluded by this endorsement.

All other terms and conditions of this policy remain unchanged.

COMPLAINT FOR DECLARATORY JUDGMENT -18

## V.    <u>GROUNDS FOR DECLARATORY JUDGMENT</u>

28.    Scottsdale refers to Paragraphs 1 through 1-27 of this Complaint and incorporates the allegations set forth therein in full in this cause of action.

29.    Scottsdale contends that is has no obligation under the Scottsdale Policies to provide Western, Hagerman and/or Hoff a defense in the Underlying Lawsuit.

30.    On information and belief, Scottsdale alleges that Western, Hoff and/or Hagerman dispute the foregoing contention, namely, that one or more of the above-cited terms, conditions and/or exclusions fully removes the potential for coverage of the Underlying Litigation under the Scottsdale Policies.

31.    An actual controversy has arisen and now exists between Scottsdale, on the one hand, and Western, Hagerman, and/or Hoff, on the other hand, with respect to whether Scottsdale has a duty to defend Western against the Underlying Litigation.

32.    Given the above-stated controversy, Scottsdale hereby respectfully requests a judicial determination and declaratory judgment that Scottsdale is not obligated under the Scottsdale Policies to provide Western, Hagerman and/or Hoff with a defense against the Underlying Lawsuit.

33.    Scottsdale contends that is has no obligation under the Scottsdale Policies to indemnify Western, Hagerman and/or Hoff for any judgment that may, or settlement that may be reached, with respect to the Underlying Litigation.

34.    On information and belief, Scottsdale alleges that Western, Hagerman and/or Hoff dispute the foregoing contention, namely, that one or more of the above-cited terms, conditions and/or exclusions fully removes the potential for coverage for indemnity under the Scottsdale

COMPLAINT FOR DECLARATORY JUDGMENT -19

Policies with respect to the Underlying Litigation. Further, Scottsdale alleges that Oakmont disputes whether indemnity coverage is available to Western, Hagerman and/or Hoff under the Scottsdale Policies.

35.     An actual controversy has arisen and now exists between Scottsdale, on the one hand, and Western, Hagerman, Hoff and/or Oakmont, on the other hand, with respect to whether Scottsdale has a duty to indemnify Western, Hagerman and/or Hoff for any judgment that may entered, or settlement that may be reached, with respect to the Underlying Litigation.

36.     Given the above-stated controversy, Scottsdale hereby respectfully requests a judicial determination and declaratory judgment that Scottsdale is not obligated under the Scottsdale Policies to indemnify Western, Hagerman and/or Hoff for any judgment that may entered, or settlement that may be reached, with respect to the Underlying Litigation.

///

///

///

///

///

///

///

///

///

///

///

WHEREFORE, Scottsdale respectfully requests the following relief:

A.      Declare that Scottsdale has no duty to defend Western, Hagerman and/or Hoff in the Underlying Action;

B.      Declare that Scottsdale has no duty to indemnify Western, Hagerman and/or Hoff with respect to the Underlying Action; and

C.      Grant any other relief that this Honorable Court deems just and equitable under the circumstances, including an award of costs. Such other and further relief as the Court deems just and proper.

DATED: August 10, 2018              SELMAN BREITMAN LLP


                                    By:/s/Adam E. Jones_____

                                    ADAM E. JONES, OSB No. 152429
                                    Attorneys for Scottsdale Insurance Company

COMPLAINT FOR DECLARATORY JUDGMENT -21